**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| PUBLIC WATER SUPPLY DISTRICT NO. 2 OF ST. CHARLES COUNTY, MISSOURI, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | Case No. |
| v. | ) ) | |
| | ) | **Jury Trial Demanded** |
| HODGES FARMS & DREDGING, LLC | ) ) | |
| Defendant. | ) | |

<u>**COMPLAINT**</u>

COMES NOW Plaintiff Public Water Supply District No. 2 of St. Charles County, Missouri (the "**PWSD**"), by and through undersigned counsel, and for its Complaint against Defendant Hodges Farms & Dredging, LLC ("**Hodges**"), states:

**PARTIES**

1.      PWSD is a public water supply district located in St. Charles County, Missouri and is a political subdivision of the State of Missouri.

2.      PWSD is a citizen of Missouri for purposes of diversity of citizenship.

3.      Hodges is a Kansas limited liability company with its principal place of business at 501 N. West Street, Lebo, Kansas 66856.

4.      None of Hodges' members are citizens of Missouri.

**JURISDICTION AND VENUE**

5.      This Court has subject-matter jurisdiction over the claims herein pursuant to 28 U.S.C. § 1332(a) because PWSD and Hodges are citizens of different states and the amount in controversy exceeds $75,000.

6.      This Court has personal jurisdiction over Hodges because Hodges committed a tortious act in Missouri, transacted business in Missouri, and entered into a contract in Missouri.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims herein occurred in this judicial district.

## FACTS COMMON TO ALL COUNTS

8.      On February 13, 2025, PWSD and Keeley Construction Group, Inc. ("**Keeley**") entered into a Form of Agreement Between Owner and Contractor for Construction Contract (the "**Stipulated Price Contract**"), which itself incorporated the additional Contract Documents set forth therein (as used herein, "**Contract Documents**" means, collectively, the Stipulated Price Contract and the Contract Documents set forth therein).

9.      A copy of the Contract Documents is attached as **Exhibit A**.

10.      PWSD's contract with Keeley required Keeley—by itself or through its subcontractors—to perform structural and electrical demolition, dewatering and removal of biosolids, removal of aeration and other equipment and piping from lagoon cells, removal of electrical equipment, blowers, UV equipment, sitework, and erosion control in connection with the decommissioning of the PWSD's Wright City, Missouri lagoons.

11.      PWSD had two lagoon cells at the site, an approximate one-acre lagoon referred to sometimes as Cell 1 or the East lagoon ("**Lagoon #1**"), and an approximate 7.5 acre lagoon referred to sometimes as Cell 2 or the West lagoon ("**Lagoon #2**").

12.      Each of Lagoon #1 and Lagoon #2 had a clay liner at the bottom of the lagoons.

13.      As set forth in documents provided to Keeley, Lagoon #2 was to be repurposed as a flow equalization basin for PWSD's new wastewater treatment facility.

14.     For the removal of biosolids work, Keeley entered into a Subcontract dated February 21, 2025 (the "**Subcontract**") with Hodges whereby Hodges would "remove sludge from PWSD#2 Lagoon Cells #1 and #2."

15.     The Contract Documents authorized Keeley, through its subcontractor, Hodges, to remove the clay liner from Lagoon #1 but not to remove the clay liner from Lagoon #2.

16.     Stated differently, PWSD expected removal of the clay liner from Lagoon #1 but *not* Lagoon #2.

17.     In the Contract Documents, PWSD and Keeley anticipated removal and disposal of 984 dry tons of sludge from Lagoon #1 and Lagoon #2, and compensation for this work was included as part of a lump sum amount to be paid to Keeley.

18.     Additionally, in the Contract Documents, PWSD and Keeley provided for a contingency for removal and disposal of an additional estimated 100 dry tons of sludge as "Unit Price Work" at a rate of $371.41 per dry ton.

19.     In the Subcontract, Keeley and Hodges estimated that there were 1,084 dry tons of sludge that needed to be removed from the lagoons.

20.     The Subcontract specified a contract price for Hodges' work in the amount of $264,616.00.

21.     Within days of beginning work, Hodges claimed to have removed and disposed of sludge far in excess of the 1,084 estimated dry tons.

22.     In reality, Hodges had removed *thousands of tons of the clay liner* from not only Lagoon #1 but also Lagoon #2, and was including the weight of the much denser clay liner in its claim for sludge removal.

23.     Ultimately, Keeley submitted a change order to PWSD asserting that, in addition to the 984 dry tons accounted for in the lump sum payable in the Contract Document, *10,983.56 dry tons* of sludge were removed and disposed of, for a total of *11,967.56 dry tons*.

24.     The change order requested additional payment by PWSD of $4,079,404.07 for sludge removal and disposal based on the work performed by Hodges, *over 15 times the amount contracted for in the Subcontract.*

25.     Hodges did not have authorization or license to remove the clay liner of Lagoon #2 with the sludge from Lagoon #2.

26.     By removing the clay liner of Lagoon #2 with the sludge from Lagoon #2, Hodges exceeded the scope of its authority to enter PWSD's lagoons and damaged Lagoon #2.

27.     As a result of Hodges' actions, PWSD had to replace the clay liner of Lagoon #2 and restore Lagoon #2 to prepare it for its repurposing, a process costing in excess of $263,000.

28.     Hodges mixed clay liner with sludge removed, which inflated the claimed total dry tons of sludge removed from Lagoon #1 and Lagoon #2.

29.     The total claimed dry tons of sludge removed was *more than 10 times the estimated amount*.

30.     Keeley has claimed entitlement to millions of dollars for sludge removal beyond the Contract Price, as that phrase is defined in the Contract Documents, based on Hodges' inclusion of clay liner in the calculation of dry tons of sludge removed.

## COUNT I: NEGLIGENCE IN REMOVING CLAY LINER

31.     PWSD incorporates by reference Paragraphs 1 through 30 above as if fully set forth herein.

32.     Hodges owed PWSD a duty to exercise reasonable care not to damage PWSD's property while performing its work pursuant to its Subcontract with Keeley.

33.     Hodges breached that duty by damaging and removing the clay liner from Lagoon #2.

34.     By damaging and removing the clay liner from Lagoon #2, Hodges damaged PWSD in an amount in excess of $75,000.

35.     PWSD would not have suffered damage to Lagoon #2's clay liner if Hodges had not been negligent.

WHEREFORE, Plaintiff Public Water Supply District No. 2 of St. Charles County, Missouri respectfully requests that the Court enter judgment in its favor on its Count I against Defendant Hodges Farms & Dredging, LLC, award Plaintiff damages in an amount to be determined at trial, award Plaintiff its costs, and grant such other and further relief the Court deems just and proper under the circumstances.

**COUNT II: NEGLIGENCE IN MIXING CLAY LINER WITH SLUDGE**

36.     PWSD incorporates by reference Paragraphs 1 through 30 above as if fully set forth herein.

37.     Hodges owed PWSD a duty to exercise reasonable care not to include clay liner in its purported dry tons of sludge removed while performing its work pursuant to its Subcontract with Keeley.

38.     Hodges breached that duty by mixing the clay liner removed from Lagoon #1 and Lagoon #2 with sludge before the sludge was sent for lab analysis of dry tonnage.

39. By mixing the clay liner removed from Lagoon #1 and Lagoon #2 with sludge before the sludge was sent for lab analysis of dry tonnage Hodges damaged PWSD in an amount in excess of $75,000.

WHEREFORE, Plaintiff Public Water Supply District No. 2 of St. Charles County, Missouri respectfully requests that the Court enter judgment in its favor on its Count II against Defendant Hodges Farms & Dredging, LLC, award Plaintiff damages in an amount to be determined at trial, award Plaintiff its costs, and grant such other and further relief the Court deems just and proper under the circumstances.

## COUNT III: NEGLIGENT MISREPRESENTATION

40. PWSD incorporates by reference Paragraphs 1 through 30 above as if fully set forth herein.

41. In the course of its business, Hodges supplied information to Keeley and PWSD, that Hodges had removed 11,967.56 dry tons of sludge from Lagoon #1 and Lagoon #2 (the "**Information**"), 10,983.56 dry tons more than Keeley and PWSD anticipated in the Contract Documents.

42. As a result of Hodges' failure to exercise ordinary care, the Information was false, in that the claimed dry tons of sludge contained substantial quantities of clay liner from Lagoon #1 and Lagoon #2.

43. The Information was intentionally provided by Hodges for the guidance of limited persons in a particular business transaction.

44. PWSD justifiably relied on the Information by agreeing to make a part payment towards Keeley's claim for additional moneys under the Stipulated Price Contract, while reserving all rights including for recovery of that payment.

45.     Due to PWSD's reliance on the Information, PWSD suffered a pecuniary loss in the amount of $1,000,000, plus its fees and costs to defend the action filed by Keeley in an attempt to recover additional moneys based on Hodges' failure to exercise ordinary care in representing that the clay liner it had removed was sludge.

WHEREFORE, Plaintiff Public Water Supply District No. 2 of St. Charles County, Missouri respectfully requests that the Court enter judgment in its favor on its Count III against Defendant Hodges Farms & Dredging, LLC, award Plaintiff damages in an amount to be determined at trial, award Plaintiff its costs, and grant such other and further relief the Court deems just and proper under the circumstances.

## COUNT IV: STATUTORY TRESPASS

46.     PWSD incorporates by reference Paragraphs 1 through 30 above as if fully set forth herein.

47.     RSMo. § 537.340.1 states, in part, "If any person shall cut down, injure or destroy . . . or shall dig up, quarry or carry away any . . . clay . . . or other substance or material being a part of the realty . . . in which such person has no interest or right, standing, lying or being on land not such person's own . . . the person so offending shall pay to the injured treble the value of the things so injured, broken, destroyed or carried away, with costs.  Any person filing a claim for damages pursuant to this section need not prove negligence or intent."

48.     Hodges dug up and carried away the clay liner from Lagoon #2.

49.     The clay liner was part of PWSD's real property, specifically, Lagoon #2.

50.     Hodges had no interest or right in the clay liner nor any authorization or license to take and carry away the clay liner from Lagoon #2.

51.     The removal of the clay liner from Lagoon #2 damaged PWSD in that the clay liner has value and PWSD has incurred significant costs to remediate the liner of Lagoon #2 that Hodges removed.

52.     By unlawfully removing the clay liner from Lagoon #2, Hodges damaged PWSD in an amount in excess of $75,000.

WHEREFORE, Plaintiff Public Water Supply District No. 2 of St. Charles County, Missouri respectfully requests that the Court enter judgment in its favor on its Count IV against Defendant Hodges Farms & Dredging, LLC, award Plaintiff treble the amount of damages to be determined at trial, award Plaintiff its costs, and grant such other and further relief the Court deems just and proper under the circumstances.

### COUNT V: COMMON LAW TRESPASS

53.     PWSD incorporates by reference Paragraphs 1 through 30 above as if fully set forth herein.

54.     Hodges did not have authority or license to disturb or enter upon PWSD's property for the purpose of removing the clay liner of Lagoon #2.

55.     Nevertheless, Hodges entered upon PWSD's property and damaged and removed clay liner from Lagoon #2.

56.     The removal of the clay liner from Lagoon #2 damaged PWSD in that the clay liner has value and PWSD has incurred significant costs to remediate the liner of Lagoon #2 that Hodges removed.

57.     The unlawful removal of the clay liner from Lagoon #2 by Hodges caused damage to PWSD in an amount in excess of $75,000.

WHEREFORE, Plaintiff Public Water Supply District No. 2 of St. Charles County, Missouri respectfully requests that the Court enter judgment in its favor on its Count V against Defendant Hodges Farms & Dredging, LLC, award Plaintiff damages in an amount to be determined at trial, award Plaintiff its costs, and grant such other and further relief the Court deems just and proper under the circumstances.

SANDBERG PHOENIX & von GONTARD P.C.

By: */s/ Matthew S. Shorey*
Anthony Soukenik, #34097MO
Mark Piontek, #36221MO
Matthew S. Shorey, #47861MO
701 Market Street, Suite 600
St. Louis, Missouri 63101
314.231.3332
314.241.7604 (fax)
asoukenik@sandbergphoenix.com
mpiontek@sandbergphoenix.com
mshorey@sandbergphoenix.com

*Attorneys for Plaintiff Public Water Supply
District No. 2 of St. Charles County, Missouri*